IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Susan Pisano <br> 244 Carreg Cain Drive <br> Granville, Ohio 43023 | * <br><br> * | |
| Plaintiff, | * | Case No. 2:17-cv-1038 |
| v. | * | Judge |
| Trinity Health Corporation <br> c/o CT Corporation System <br> 4400 Easton Commons Way, Ste. 125 <br> Columbus, Ohio 43219 | * <br><br> * <br><br> * | Magistrate Judge <br><br> **JURY DEMAND ENDORSED HEREON** |
| -and- | * | |
| Mount Carmel Health System <br> c/o CT Corporation System <br> 4400 Easton Commons Way, Ste. 125 <br> Columbus, Ohio 43219 | * <br><br> * | |
| Defendants. | * | |

## COMPLAINT

Now comes Plaintiff Susan Pisano ("Plaintiff") for her complaint against Trinity Health Corporation ("Defendant THC" or "THC") and Mount Carmel Health System ("Defendant MCHS" or "MCHS") (collectively, "Defendants") hereby states as follows:

### I. JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and disability discrimination in violation of 42 U.S.C. § 12112, *et seq.*, of Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended ("ADAAA"). Plaintiff also claims of disability discrimination in violation of Ohio Revised Code Chapter 4112 ("Chapter 4112"). Plaintiff brings this action to obtain relief

provided in the FMLA, the ADA and ADAAA, and Chapter 4112 as a result of Defendants' discriminatory and retaliatory conduct towards her resulting in loss of wages, compensation, and benefits.

2. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises additional claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction because Plaintiff's state law claims are so related to the federal claims that they share a common core of operative facts.

3. Venue is proper in this forum pursuant to 28 U.S.C. §1391, because the Plaintiff entered into an employment relationship with Defendants in the Southern District of Ohio, a substantial part of the events or omission giving rise to the claim occurred in the Southern District of Ohio, and Defendants have their principal place of business as well as conducted substantial business in the Southern District of Ohio.

## II. PARTIES

4. Plaintiff Susan Pisano is an individual and resident of Granville in Licking County, Ohio. Plaintiff brings this action to redress injuries committed against her as a result of Defendants' actions.

5. At all times relevant herein, Plaintiff was an "eligible employee" as defined in the FMLA in that she was employed by Defendants for at least twelve (12) months and for at least 1,250 hours of service during the twelve (12) months before she sought FMLA leave from Defendants.

6. In addition, Plaintiff was an "employee" within the meaning of the ADA and Ohio Revised Code § 4112.01(A)(3).

7. Defendant Trinity Health Corporation ("Defendant THC" or "THC") is a foreign non-profit corporation established and organized under the laws of Indiana, but licensed to conduct substantial business in the Southern District of Ohio.

8. Defendant Mount Carmel Health System ("Defendant MCHS" or "MCHS") is a domestic non-profit corporation that conducts substantial business in the Southern District of Ohio.

9. At all times material herein, Defendants Trinity Health Corporation and Mount Carmel Health System (collectively, "Defendants") were Plaintiff's "employer" as defined by the FMLA, 29 U.S.C. § 2611, *et seq.*, the ADA, 42 U.S.C. § 12111(5), and Ohio Revised Code § 4112.01(A)(2).

### III. STATEMENT OF FACTS

10. Plaintiff began her employment with Defendants as a part-time phlebotomist in 2000 and was thereafter hired on a full-time basis in that position in 2002.

11. During her employment with Defendants, Plaintiff consistently met or exceeded her superiors' expectations and was qualified to work with reasonable accommodations.

12. Plaintiff has a record of and suffers from the following health condition: a total inability to hear due to complete deafness in both ears. Plaintiff's deafness constitutes a physical impairment and a disability and will hereafter be called her "disability."

13. Plaintiff's disability substantially limits her major life activities, including but not limited to her ability to communicate in-person and by telephone, to hear sounds of all types, and to generally interact and communicate verbally as non-deaf individuals.

14. Plaintiff was qualified and able to perform the essential functions of her phlebotomist position with reasonable accommodations despite her deafness and effectively performed the

same throughout her employment with Defendants over her approximately fourteen (14) years' of full-time employment with the company.

15. When Plaintiff began her employment with Defendants, she requested a "Text Telephone" device ("TTY") that would have allowed her to communicate with individuals outside of her office despite her disability.

16. However, Defendants refused to provide Plaintiff with the requested TTY device.

17. On other occasions, Defendants failed and/or refused to provide Plaintiff with other reasonable accommodations she requested.

18. For example, Plaintiff requested but was denied written program materials that would have allowed her to fully participate in various employment training programs that other non-deaf employees were able to attend and participate in.

19. When Plaintiff inquired why her requested accommodations had not been provided, Defendants simply told her that she should not attend the employee training programs because no accommodations would be provided.

20. Over the years, Defendants additionally failed to provide Plaintiff with other accommodations, including interpreters or interpretation services, despite Plaintiff's repeated requests for such services and her obvious need for the same due to her complete deafness.

21. In or around June of 2016 through August 2016, Plaintiff was placed on continuous FMLA medical leave due to severe vertigo caused by an inner ear condition.

22. On or around September 1, 2016, Plaintiff returned to work following her FMLA-qualifying medical leave.

23. Then, on September 30, 2016, Defendants advised Plaintiff that her position was purportedly being eliminated.

24. At that same time, Defendants' human resources representative stated that she had already reviewed all of Defendants' available job postings and there were no openings for Plaintiff.

25. Plaintiff later learned that her position was not being eliminated, but that Defendants' changed her position title to "Phlebotomist/Registration Specialist."

26. When Plaintiff asked Defendants why she was being terminated when her office still needed a phlebotomist and why Defendants did not consider her for the "Phlebotomist/Registration Specialist" based on her fourteen (14) years of experience in that role and fifty-three (53) years of lab work experience, Defendants replied that the position would be different from her employment and listed several job duties it claimed her prior role did not include.

27. After Plaintiff's considerable persistence, Defendants allowed Plaintiff to apply for the "Phlebotomist/Registration Specialist" position at the office where she had already worked for the last fourteen (14) years.

28. However, Defendants again failed to provide Plaintiff with reasonable accommodations that she requested in order to interview and apply for that position.

29. Plaintiff requested a face-to-face interview for the position because she could not conduct a phone interview without a relay operator's services. Defendants' representative stated an initial phone interview was mandatory and denied Plaintiff's request[1].

30. After Plaintiff attempted to comply with Defendants' demand that the initial interview be conducted by phone by using a relay operator, Defendants then stated a number of the interview questions would not work with a relay operator's services.

---

[1] Upon information and belief, despite telling Plaintiff that the initial interview was mandatory, at least one other applicant for the position from the same office was granted an in-person initial interview.

31. Plaintiff then suggested the interview be conducted by email, but Defendants likewise denied that request. Defendants stated her application would be rescinded if Plaintiff could not interview by phone.

32. It was only after Plaintiff's repeated efforts and numerous requests that Defendants finally relented and stated she could travel to Columbus for an in-person interview.

33. However, Defendants then required Plaintiff to simultaneously interview with approximately five (5) to six (6) interviewers notwithstanding that Plaintiff must read lips to communicate and despite the considerable difficulties Plaintiff experienced reading the lips of and responding to this many interviewers.

34. Defendants ultimately terminated Plaintiff's employment and/or refused to hire her for the "Phlebotomist/Registration Specialist" position at the office where she had worked for the last fourteen (14) years.

35. At all times during her employment, Plaintiff was qualified to perform the essential functions of her job and/or the "Phlebotomist/Registration Specialist" position with reasonable accommodation(s). Refusing to engage in the interactive process and further regularly refusing provide reasonable accommodations created a hostile work environment.

36. Plaintiff subsequently filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC").

37. On September 6, 2017, the EEOC mailed Plaintiff a Notice of Right to Sue to pursue her claims under the ADA against Defendants for disability discrimination.

### IV. CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**29 U.S.C. § 2615, *et seq.* - FMLA Interference with Rights and Retaliation**

38. All of the preceding paragraphs are realleged as if fully rewritten herein.

39. At all times relevant, Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611(2).

40. At all times relevant, Defendants were an "employer" as defined by 29 U.S.C. § 2611(4)(A).

41. Plaintiff's request for, and use of, FMLA leave beginning in or around June of 2016 through August of 2016 were for her "serious health condition" as defined by 29 U.S.C. § 2611(11)(B).

42. On or around September 1, 2016, Plaintiff was cleared by her physician to return to work without medical restrictions. Plaintiff returned and performed her responsibilities without incident.

43. The same month that she returned from FMLA medical leave, Defendants informed Plaintiff that her position was purportedly being eliminated.

44. At that same time, Defendants' human resources representative stated that she had already reviewed all of Defendants' available job postings and there were no openings for Plaintiff.

45. Plaintiff later learned that her position was not being eliminated, but that Defendants' changed her position title to "Phlebotomist/Registration Specialist."

46. Defendants ultimately terminated Plaintiff's employment and/or refused to hire her for the "Phlebotomist/Registration Specialist" position at the office where she had worked for the last fourteen (14) years.

47. Pursuant to 29 U.S.C. § 2615(a)(1), it is unlawful for an employer to interfere with an employee's right to exercise FMLA leave. An employer is also prohibited from discriminating or

retaliating against an employee who exercises a right under the FMLA. *See* 29 U.S.C. § 2615(a)(2).

48. Defendants have willfully and/or recklessly retaliated against, interfered with, restrained, and/or denied Plaintiff's rights in violation of the FMLA, by taking the following non-exhaustive list of actions: treating Plaintiff less favorably than similarly situated employees who did not exercise rights under the FMLA, by advising Plaintiff that her position was purportedly being eliminated shortly after she returned from FMLA leave, by stating that Defendants had already reviewed all available job postings and there were no other openings for Plaintiff, by failing to advise Plaintiff that her phlebotomist position was not being eliminated, but that Defendants' had changed her position title to "Phlebotomist/Registration Specialist", by failing to consider Plaintiff for the "Phlebotomist/Registration Specialist" based on her fourteen (14) years of experience in that role and fifty-three (53) years of lab work experience, and by ultimately terminating Plaintiff's employment and/or refusing to hire her for the "Phlebotomist/Registration Specialist" position at the same office where she worked for the last fourteen (14) years.

49. Defendants lacked good faith to believe it had not violated the FMLA in their actions.

50. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages, including but not limited to lost wages and benefits as well as time and money in endeavoring to protect herself from Defendants, including costs and attorneys' fees in accordance with 29 U.S.C. § 2617(a).

## SECOND CAUSE OF ACTION
### ADA – Disability Discrimination

51. All of the preceding paragraphs are realleged as if fully rewritten herein.

52. At all times material herein, Plaintiff was disabled, was regarded as disabled, or had a record of being disabled, as defined in 42 U.S.C. § 12112, *et seq.*, of Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended ("ADAAA"), because she suffered from a physical impairment that substantially limits her ability to perform several major life activities and/or impacts major life functions.

53. Defendants knew Plaintiff was disabled, or regarded as disabled, as defined in 42 U.S.C. § 12102.

54. Defendants treated Plaintiff less favorably than other similarly situated employees without disabilities.

55. Alternatively, Defendants discriminated against Plaintiff because of her disability, record of having an impairment, or being regarded as having an impairment as defined in 42 U.S.C. §12102(1).

56. Despite her physical impairment(s), Plaintiff was able to perform the essentials functions of her job with or without a reasonable accommodation. Accordingly, Plaintiff was an "otherwise qualified" individual.

57. Defendants discriminated against Plaintiff because of her disability, her record of disability, or because Defendants regarded Plaintiff as disabled by taking the following non-exhaustive list of actions: failing to engage in the interactive process, failing to accommodate her disability, creating a hostile work environment by repeatedly failing to provide reasonable accommodations, failing to permit Plaintiff to continue working as a phlebotomist, failing to accommodate Plaintiff to interview for the "Phlebotomist/Registration Specialist" position, failing to hire Plaintiff for the "Phlebotomist/Registration Specialist", terminating Plaintiff's employment as a phlebotomist for Defendants due to her disability, and/or by otherwise

discriminating against her in the terms, privileges and conditions of employment while other similarly-situated employees without disabilities received more favorable treatment.

58. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to emotional distress and the loss of compensation, benefits and other terms, privileges and conditions of employment for which Defendants are liable.

59. Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages, punitive damages, reasonable attorneys' fees, costs, and other relief available under Ohio Revised Code Chapter 4112.

## THIRD CAUSE OF ACTION
### ADA - Failure to Engage in the Interactive Process and Accommodate

60. Plaintiff restates the allegations contained in the preceding paragraphs as if fully rewritten herein.

61. Pursuant to 42 U.S.C. § 12112(b)(5)(A), it is unlawful for an employer to not make reasonable accommodations to the known physical limitations of an otherwise qualified individual with a disability who is an employee.

62. Defendants were aware of Plaintiff's disability.

63. Prior to her termination, Plaintiff requested reasonable accommodations for her disability. These reasonable accommodations would not cause any unduly hardship to Defendants.

64. Defendants violated 42 U.S.C. § 12112(b)(5)(A) by failing to accommodate Plaintiff's disability, and by failing to engage in a good faith interactive process to determine an objectively reasonable accommodation for her disability.

65. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendants are liable.

66. Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

**FOURTH CAUSE OF ACTION**
**ADA – Retaliation**

67. All of the preceding paragraphs are realleged as if fully rewritten herein.

68. This claim is brought under the ADA, pursuant to 42 U.S.C. § 12203(a), which provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA]…" *See* 42 U.S.C. § 12203(a).

69. Plaintiff engaged in a protected activity by requesting reasonable accommodation for her disability – to continue working as a phlebotomist for Defendants and/or to be accommodated to interview for the "Phlebotomist/Registration Specialist" and hired for that position.

70. Defendants knew that Plaintiff engaged in protected activity.

71. Once Plaintiff engaged in the aforementioned protected activity, Defendants purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: refusing to engage in the interactive process, refusing to provide reasonable accommodation, refusing to continue employing Plaintiff due to her disability, refusing to consider her for the "Phlebotomist/Registration Specialist", refusing to accommodate Plaintiff to interview for the "Phlebotomist/Registration Specialist" due to her disability, refusing to hire Plaintiff for the "Phlebotomist/Registration Specialist" position due to her disability, terminating Plaintiff's

employment as a phlebotomist for Defendants due to her disability, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment while other similarly-situated employees without disabilities received more favorable treatment.

72. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to emotional distress and the loss of compensation, benefits and other terms, privileges and conditions of employment for which Defendants are liable.

73. Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages, punitive damages, reasonable attorneys' fees, costs, and other relief available under the ADA.

## FIFTH CAUSE OF ACTION
### Ohio Revised Code § 4112.02 – Disability Discrimination

74. All of the preceding paragraphs are realleged as if fully rewritten herein.

75. At all times relevant herein, Plaintiff was disabled, regarded as disabled, or she had a record of a disability, as defined in O.R.C. § 4112.01(A)(13), because she suffered from a physical impairment that substantially limits her ability to perform several major life activities and/or impacts major life functions.

76. Despite her physical impairment(s), Plaintiff was able to perform the essentials functions of her job with or without a reasonable accommodation. Accordingly, Plaintiff was an "otherwise qualified" individual.

77. Defendants knew Plaintiff was disabled, and/or had a record of impairment, and/or regarded her as disabled.

78. Defendants discriminated against Plaintiff because of her disability or record of impairment by taking the following non-exhaustive list of actions: refusing to engage in the interactive process, refusing to provide reasonable accommodation, refusing to continue employing Plaintiff due to her disability, refusing to consider her for the "Phlebotomist/Registration Specialist", refusing to accommodate Plaintiff to interview for the "Phlebotomist/Registration Specialist" due to her disability, refusing to hire Plaintiff for the "Phlebotomist/Registration Specialist" position due to her disability, terminating Plaintiff's employment as a phlebotomist for Defendants due to her disability, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment while other similarly-situated employees without disabilities received more favorable treatment.

79. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to emotional distress and the loss of compensation, benefits and other terms, privileges and conditions of employment for which Defendants are liable.

80. Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages, punitive damages, reasonable attorneys' fees, costs, and other relief available under Ohio Revised Code Chapter 4112.

**SIXTH CAUSE OF ACTION**
**Failure to Engage in the Interactive Process and Accommodate - R.C. § 4112.02**

81. Plaintiff restates the allegations contained in the preceding paragraphs as if fully rewritten herein.

82. At all times material herein, Plaintiff suffered from a physical impairment within the meaning of R.C §4112.01(A)(13) of the Ohio Revised Code.

83. Defendants were aware of Plaintiff's disability.

84. Prior to her termination, Plaintiff requested reasonable accommodations for her disability.

85. Defendants violated R.C. §4112.02 by failing to accommodate Plaintiff's disability and by failing to engage in a good faith interactive process to determine an objectively reasonable accommodation for her disability.

86. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendants are liable.

87. Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

### SEVENTH CAUSE OF ACTION
### Ohio Revised Code § 4112.02(I) - Retaliation

88. All of the preceding paragraphs are realleged as if fully rewritten herein.

89. This claim is brought under Ohio law, pursuant to Ohio Revised Code § 4112.02(I), *et seq*.

90. Plaintiff engaged in a protected activity by requesting reasonable accommodation for her disability as described in the preceding paragraphs.

91. Defendants knew that Plaintiff engaged in a protected activity.

92. Once Plaintiff engaged in the aforementioned protected activity, Defendants purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: refusing to engage in the interactive process, refusing to provide reasonable accommodation, refusing to continue employing Plaintiff due to her disability, refusing to consider her for the "Phlebotomist/Registration Specialist", refusing to accommodate Plaintiff to interview for the

"Phlebotomist/Registration Specialist" due to her disability, refusing to hire Plaintiff for the "Phlebotomist/Registration Specialist" position due to her disability, terminating Plaintiff's employment as a phlebotomist for Defendants due to her disability, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment while other similarly-situated employees without disabilities received more favorable treatment.

93. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to emotional distress and the loss of compensation, benefits and other terms, privileges and conditions of employment for which Defendants are liable.

94. Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages, punitive damages, reasonable attorneys' fees, costs, and other relief available under Ohio Revised Code Chapter 4112.

V. **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands lost wages and benefits, front pay and benefits, and additional damages to be determined at trial, including but not limited to statutory damages, compensatory damages, liquidated damages, punitive damages, pre-judgment interest, post-judgment interest, costs, attorneys' fees, and all other relief the Court deems just and appropriate.

Respectfully submitted,

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
**Coffman Legal, LLC**
1457 S. High St.
Columbus, Ohio 43207
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

>*/s/ Peter A. Contreras*
>Peter Contreras (0087530)
>**CONTRERAS LAW, LLC**
>PO Box 215
>Amlin, Ohio 43002
>Phone: 614-787-4878
>Fax: 614-923-7369
>Email: peter.contreras@contrerasfirm.com
>
>*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff requests a trial by a jury of eight (8) persons.

>*/s/ Matthew J.P. Coffman*
>Matthew J.P. Coffman